# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY,

    *Plaintiff*,

    v.

DONALD J. TRUMP, in his official capacity
as President of the United States of America,
*et al.*,

    *Defendants*.

Civil Action No. 8:25-cv-00260-PX

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.     Statutory Framework ................................................................................................ 2

     A.     The Competitive and Excepted Service ................................................. 2

     B.     The President and OPM's Authority over the Federal Workforce ...................... 3

     C.     The Statutory Basis for Policy/Career Designations ............................ 5

II.     Factual and Procedural Background ......................................................................... 6

     A.     The Prior Executive Orders and Regulations ...................................... 6

     B.     The 2025 Policy/Career Order and OPM Guidance ............................ 8

     C.     This Lawsuit ........................................................................................ 9

LEGAL STANDARDS ....................................................................................................... 9

ARGUMENT ..................................................................................................................... 10

I.     This Court Should Dismiss for Lack of Jurisdiction ............................................. 10

     A.     Plaintiff Lacks Standing ..................................................................... 10

     B.     This Suit is Not Ripe for Adjudication ............................................... 13

II.     Plaintiff's APA and Ultra Vires Claims are Barred ............................................... 16

     A.     APA Review is Barred Here for Lack of Final Agency Action ......... 16

     B.     Ultra Vires Is Not Cognizable Here ................................................... 18

III.     A Future Reclassification by the President is Authorized by Statute ..................... 21

     A.     Plaintiff Brings a Facial Challenge ..................................................... 21

     B.     Plaintiff's Facial Challenge Fails ....................................................... 22

     C.     Constitutional Avoidance Principles Affirm the President's Authority ........... 25

IV.     The President Lawfully Rendered Inoperative the Prior Regulations ..................... 27

     A.     Congress Did Not Require Notice and Comment by the President .................. 27

i

B.    The APA Exempts Personnel Rules from Notice and Comment ...................... 29

V.    Plaintiff Does Not Plausibly Allege a Due Process Claim. ........................................... 30

CONCLUSION ................................................................................................................... 33

## TABLE OF AUTHORITIES

**CASES**

*Abbott Lab'ys v. Gardner*,
   387 U.S. 136 (1967),
   *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ............................. 14

*Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell*,
   No. 25-cv-10276-GAO, 2025 WL 470459 (D. Mass. Feb. 12, 2025) ..................................... 13

*Am. Fed'n of Gov't Emps., AFL-CIO v. OPM*,
   --- S. Ct. ---, 2025 WL 1035208 (U.S. Apr. 8, 2025) .............................................................. 12

*Am. Hosp. Ass'n v. NLRB*,
   499 U.S. 606 (1991)................................................................................................................. 21

*Am. Sch. of Magnetic Healing v. McAnnulty*,
   187 U.S. 94 (1902)................................................................................................................... 20

*Am. Tort Reform Ass'n v. Occupational Safety & Health. Admin.*,
   738 F.3d 387 (D.C. Cir. 2013) ................................................................................................ 14

*Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.*,
   801 F. Supp. 2d 383 (D. Md. 2011), *aff'd*, 698 F.3d 171 (4th Cir. 2012) ......................... 28, 29

*Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec.*,
   698 F.3d 171 (4th Cir. 2012) .................................................................................................. 18

*Ariz. Christian Sch. Tuition Org. v. Winn*,
   563 U.S. 125 (2011)................................................................................................................. 10

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015)................................................................................................................. 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................... 9, 10

*AT&T Corp. v. Iowa Utils. Bd.*,
   525 U.S. 366 (1999)................................................................................................................. 14

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991)................................................................................................................... 20

*Bd. of Regents of State Colleges v. Roth*,
   408 U.S. 564 (1972)................................................................................................................. 31

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................ 9, 10

*Bennett v. Spear*,
  520 U.S. 154 (1997)...................................................................................................... 16

*Brown v. Gardner*,
  513 U.S. 115 (1994)...................................................................................................... 25

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)................................................................................................ 11, 12

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985)........................................................................................ 31, 32, 33

*Collins v. Yellen*,
  594 U.S. 220 (2021)...................................................................................................... 26

*Correa-Ruiz v. Fortuno*,
  573 F.3d 1 (1st Cir. 2009)............................................................................................ 33

*Dalton v. Specter*,
  511 U.S. 462 (1994)................................................................................................ 19, 28

*Dean v. Dep't of Lab.*,
  808 F.3d 497 (Fed. Cir. 2015)..................................................................................... 24

*Dep't of Navy v. Egan*,
  484 U.S. 518 (1988)...................................................................................................... 24

*DHS v. MacLean*,
  574 U.S. 383 (2015)...................................................................................................... 23

*Doe v. Va. Dep't of State Police*,
  713 F.3d 745 (4th Cir. 2013) ....................................................................................... 15

*EPA v. EME Homer City Generation, L.P.*,
  572 U.S. 489 (2014)...................................................................................................... 21

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009)...................................................................................................... 27

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024).................................................................................. 10, 11, 12, 13

*Fed. Express Corp. v. U.S. Dep't of Com.*,
  39 F.4th 756 (D.C. Cir. 2022) ................................................................................ 19, 20

iv

*Fischer v. United States,*
603 U.S. 480 (2024)................................................................. 25

*Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S. EPA,*
313 F.3d 852 (4th Cir. 2002) ................................................. 17

*Franklin v. Massachusetts.,*
505 U.S. 788 (1992).......................................................... *passim*

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010)................................................................. 27

*Gattis v. Gravett,*
806 F.2d 778 (8th Cir. 1986) ............................................ 32, 33

*Griffith v. Fed. Lab. Rels. Auth.,*
842 F.2d 487 (D.C. Cir. 1988)................................................. 18

*Humana of S.C., Inc. v. Califano,*
590 F.2d 1070 (D.C. Cir. 1978)............................................... 29

*INS v. Nat'l Ctr. for Immigrants' Rts., Inc.,*
502 U.S. 183 (1991)................................................................. 21

*Int'l Refugee Assistance Project v. Trump,*
857 F.3d 554 (4th Cir. 2017), *vacated and remanded,* 583 U.S. 912 (2017) ............ 19

*Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n,*
105 F.4th 627 (4th Cir. 2024),
*petition for cert. docketed,* No. 24-693 (U.S. Dec. 30, 2024)................................ 16

*Jud. Watch, Inc. v. U.S. Secret Serv.,*
726 F.3d 208 (D.C. Cir. 2013)................................................. 26

*Leonard v. Douglas,*
321 F.2d 749 (D.C. Cir. 1963)................................................. 32

*Lepre v. Dep't of Lab.,*
275 F.3d 59 (D.C. Cir. 2001)................................................... 20

*Lincoln v. Vigil,*
508 U.S. 182 (1993)........................................................... 27, 28

*Louisiana ex rel. Landry v. Biden,*
64 F.4th 674 (5th Cir. 2023) ................................................... 17

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)..................................................... 10, 11, 13

*Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*,
   91 F.3d 630 (4th Cir. 1996) ................................................................ 33

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ........................................................................... 30

*McMurtray v. Holladay*,
   11 F.3d 499 (5th Cir. 1993) ................................................................ 33

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024) ........................................................................... 21

*Murthy v. Missouri*,
   603 U.S. 43 (2024) ............................................................................. 11

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
   538 U.S. 803 (2003) ...................................................................... 14, 15

*Nat'l Treasury Emps. Union v. Helfer*,
   53 F.3d 1289 (D.C. Cir. 1995) .............................................................. 3

*Nat'l Treasury Emps. Union v. Horner*,
   854 F.2d 490 (D.C. Cir. 1988) ........................................................... 23

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010) ......................................................... 19

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ............................................................................. 16

*Nyunt v. Chairman, Broad. Bd. of Governors*,
   589 F.3d 445 (D.C. Cir. 2009) ........................................................... 18

*Perez v. Mortg. Bankers Ass'n*,
   575 U.S. 92 (2015) ........................................................................ 28, 29

*Rea v. Matteucci*,
   121 F.3d 483 (9th Cir. 1997) .............................................................. 32

*Roth v. Brownell*,
   215 F.2d 500 (D.C. Cir. 1954) ........................................................... 32

*Safe Sts. All. v. Hickenlooper*,
   859 F.3d 865 (10th Cir. 2017) ........................................................... 20

*Schroer v. Billington*,
   525 F. Supp. 2d 58 (D.D.C. 2007) ..................................................... 18

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
   591 U.S. 197 (2020) .................................................................................. 26, 27

*Sierra Club v. EPA,*
   754 F.3d 995 (D.C. Cir. 2014) ......................................................................... 13

*Sierra Club v. EPA,*
   873 F.3d 946 (D.C. Cir. 2017) ......................................................................... 29

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ....................................................................................... 10

*Stanley v. Department of Justice,*
   423 F.3d 1271 (Fed. Cir. 2005) ....................................................................... 24

*Stanley v. Gonzales,*
   476 F.3d 653 (9th Cir. 2007) .......................................................................... 24

*Stewart v. Smith,*
   673 F.2d 485 (D.C. Cir. 1982) ......................................................................... 30

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) .................................................................................. 10, 13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
   551 U.S. 308 (2007) ......................................................................................... 9

*Texas v. United States,*
   523 U.S. 296 (1998) ....................................................................................... 14

*Town of Castle Rock v. Gonzales,*
   545 U.S. 748 (2005) ....................................................................................... 31

*Truckers United for Safety v. Fed. Highway Admin.,*
   139 F.3d 934 (D.C. Cir. 1998) ......................................................................... 15

*Trump v. United States,*
   603 U.S. 593 (2024) ....................................................................................... 26

*U.S. ex rel. Vuyyuru v. Jadhav,*
   555 F.3d 337 (4th Cir. 2009) ............................................................................ 9

*U.S. Telecom Ass'n v. FCC,*
   359 F.3d 554 (D.C. Cir. 2004) ......................................................................... 29

*United States v. Fausto,*
   484 U.S. 439 (1988) ....................................................................................... 32

*United States v. Salerno,*
   481 U.S. 739 (1987) ......................................................................................... 21, 23

*VanderKam v. VanderKam,*
   776 F.3d 883 (D.C. Cir. 2015) ................................................................................. 15

*Verizon Commc'ns, Inc. v. FCC,*
   535 U.S. 467 (2002) ................................................................................................ 15

*Warth v. Seldin,*
   422 U.S. 490 (1975) ................................................................................................ 13

*Wild Va. v. Council on Env't Quality,*
   56 F.4th 281 (4th Cir. 2022) ................................................................................... 14

*Yellen v. Confederated Tribes of Chehalis Rsrv.,*
   594 U.S. 338 (2021) ................................................................................................ 23

*Zadvydas v. Davis,*
   533 U.S. 678 (2001) ................................................................................................ 26

**CONSTITUTION**

U.S. Const. art. II, § 1 ..................................................................................................... 26

U.S. Const. amend. V ...................................................................................................... 30

**STATUTES**

5 U.S.C. § 551 ...................................................................................... 16, 18, 28, 29

5 U.S.C. § 553 ............................................................................................... 5, 27, 29

5 U.S.C. § 704 .................................................................................................... 16, 28

5 U.S.C. § 1103 .................................................................................................. 4, 5, 30

5 U.S.C. § 1104 ..................................................................................................... 4, 29

5 U.S.C. § 1105 ..................................................................................................... 5, 30

5 U.S.C. § 1301 ......................................................................................................... 4

5 U.S.C. § 1302 ..................................................................................................... 7, 29

5 U.S.C. § 2102 ......................................................................................................... 3

5 U.S.C. § 2301 ......................................................................................................... 4

5 U.S.C. § 2302 .................................................................................................. *passim*

5 U.S.C. § 2951 .................................................................................................. 4

5 U.S.C. § 3132 .............................................................................................. 4, 25

5 U.S.C. § 3134 ................................................................................................ 25

5 U.S.C. § 3301 .................................................................................................. *passim*

5 U.S.C. § 3302 .................................................................................................. *passim*

5 U.S.C. § 3304 .............................................................................................. 3, 4

5 U.S.C. § 5107 .................................................................................................. 4

5 U.S.C. § 5112 .................................................................................................. 4

5 U.S.C. § 5405 .................................................................................................. 5

5 U.S.C. § 7301 .................................................................................................. 4

5 U.S.C. §§ 7511–14 .......................................................................................... 5

5 U.S.C. § 7511 .................................................................................................. *passim*

5 U.S.C. § 8151 .............................................................................................. 7, 29

## RULES

Fed. R. Civ. P. 12 .............................................................................................. 9

## REGULATIONS

5 C.F.R. § 210.102 ........................................................................................ 7, 8, 29

5 C.F.R. § 212.401 ............................................................................................ 7

5 C.F.R. part 302, subpart F ............................................................................ 7, 8, 29

5 C.F.R. § 302.601 ............................................................................................ 7

5 C.F.R. § 302.602 ............................................................................................ 7

5 C.F.R. § 302.603 ............................................................................................ 7

Upholding Civil Service Protections and Merit System Principles,
    88 Fed. Reg. 63,862 (Sept. 18, 2023) ........................................................ 6

ix

Upholding Civil Service Protections and Merit System Principles,
    89 Fed. Reg. 24,982 (Apr. 9, 2024) ............................................................................ 6

**ADMINISTRATIVE AUTHORITIES**

Creating Schedule F in the Excepted Service,
    Exec. Order No. 13,957, 85 Fed. Reg. 67,631 (Oct. 26, 2020) ................................... 6

Excepting Administrative Law Judges from the Competitive Service,
    Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 10, 2018)............................ 5, 22

Protecting the Federal Workforce,
    Exec. Order No. 14,003, 86 Fed. Reg. 7231 (Jan. 22, 2021)...................................... 6

Restoring Accountability to Policy Influencing Positions Within the Federal Workforce,
    Exec. Order No. 14,171, 90 Fed. Reg. 8625 (Jan. 20, 2025)...................... 1, 8, 13, 15

Recruiting and Hiring Students and Recent Graduates,
    Exec. Order No. 13,562, 75 Fed. Reg. 82,585 (Dec. 27, 2010).......................... 5, 22

**OTHER AUTHORITIES**

Congressional Research Service,
    Categories of Federal Civil Service Employment: A Snapshot (March 26, 2019),
    https://fas.org/sgp/crs/misc/R45635.pdf ..................................................................... 3

OPM,
    *Guidance on Implementing President Trump's Executive Order Titled, "Restoring
    Accountability To Policy-Influencing Positions Within the Federal Workforce,"*
    https://www.opm.gov/media/sqfnpy4n/opm-memorandum-re-schedule-policy-career-
    guidance-01-27-25-final-2.pdf (last visited Apr. 22, 2025)............................... *passim*

Samuel L. Bray, *The System of Equitable Remedies*,
    63 UCLA L. Rev. 530 (2016) ................................................................................... 14

## INTRODUCTION

Upon his reelection, President Trump set to work to transform the federal workforce. Among other things, he issued directives to require a return to in-person work, reform the federal hiring process, and, as relevant here, restore accountability for federal workers who have policy-influencing authority. Animating these and other critical reforms is the recognition that the federal workforce must be streamlined to be more efficient and better serve the American people.

Executive Order 14171, titled "Restoring Accountability to Policy Influencing Positions Within the Federal Workforce" ("Policy/Career Order"), directed the Office of Personnel Management ("OPM") to begin a process that will culminate in a choice by the President. By statute, Congress has delegated the President the authority to "except[]from the competitive service [a position] because of its confidential, policy-determining, policy-making, or policy-advocating character." 5 U.S.C. § 2302(a)(2)(B)(i); *accord id.* § 7511(b)(2)(A). The President will decide whether to move some positions into that statutory category, to be titled "Schedule Policy/Career." Through the Policy/Career Order, the President requested information from various agencies about what positions may qualify. He also provided guidance to assist agencies during their review. Finally, the President rendered inoperative several regulations previously promulgated pursuant to delegated Presidential authority. OPM later issued a memorandum informing agencies about the President's actions and providing agencies guidance on the positions that may ultimately qualify.

Plaintiff, a nonprofit advocacy organization, immediately brought suit. It alleges that the President's future decision and OPM's memorandum are ultra vires and violative of the Fifth Amendment, and that the change in regulations violates the Administrative Procedure Act's ("APA") notice-and-comment requirements. Plaintiff's attack fails for a variety of reasons.

First, Plaintiff lacks present standing to sue. It has sued with a speculative, non-cognizable injury, while challenging actions that have not yet occurred. Moreover, Plaintiff is merely a third-party bystander to the federal employment relationship, a category that rarely has standing. Plaintiff also does not allege that any position has yet been moved into Schedule Policy/Career, and indeed, it is as of now unclear what positions would be placed in such a schedule. As a result,

1

the Court does not have jurisdiction over this presently hypothetical attack on anticipated future events.

Second, Plaintiff seeks to bring suit under two authorities, both of which fail here: the APA and the "ultra vires" doctrine. The former requires a final agency action and none is present. The latter is an extraordinary vehicle that requires an unambiguous lack of authority by the executive official sued, alongside a specific, direct, and immediate impact on the challenging party. But neither of those requirements are met here—Plaintiff's lack of authority challenge is not so clear as to support an ultra vires attack and Plaintiff is not specifically, directly, and immediately impacted.

Finally, even if the Court were to reach the merits, Plaintiff's suit should not prevail. For its statutory claims, Plaintiff simply disagrees with the President's potential future choice to invoke his specific statutory authority. For its notice-and-comment challenge, the Supreme Court has held that the typical requirements do not apply to the President when he acts directly, as he did here. Even if they did, the APA excepts "personnel" related rules from notice and comment, with a specific exception to the exception under Sections 1103 and 1105 for the Director of OPM and certain rules proposed by OPM. Finally, Plaintiff cannot bring a due process claim—alleging the President has no authority— when no person, and consequently no personal life, liberty, or property interest, has been affected by any governmental action.

At bottom, Plaintiff asks this Court to disallow possible reclassifications that have not yet occurred, set aside actions based on a due process attack when no person has been deprived of any property interest, and impose a notice-and-comment requirement barred twice over. Under any of the theories that bar Plaintiff's claims here, the Court should dismiss this case.

## BACKGROUND

I. **Statutory Framework**

A. **The Competitive and Excepted Service**

Subject to various exceptions, "civil service employees in the executive branch of the federal government, other than those in the Senior Executive Service, are either in the 'competitive

service' or the 'excepted service.'" *Nat'l Treasury Emps. Union ("NTEU") v. Helfer*, 53 F.3d 1289, 1290 (D.C. Cir. 1995); *see* 5 U.S.C. § 2102. Most federal employees are in the competitive service, but roughly one third are in the excepted service. *See* Congressional Research Service, Categories of Federal Civil Service Employment: A Snapshot 4, R45635 (March 26, 2019).[1] The "excepted service" includes "positions which are specifically excepted from the competitive service by or under statute." 5 U.S.C. § 2102(a)(1)(A) (emphasis added).

Positions in the competitive service are subject to specific provisions for hiring and removal not applicable to the excepted service. *See, e.g.*, *id.* § 3304. While federal employees generally are entitled to many substantive and procedural protections related to their employment, *e.g.*, *id.* § 2302(a)(2)(B), those restrictions and procedural protections do not apply to the same extent to all those in the excepted service, *compare id.* § 7511(a)(1)(A) ("employee" entitled to certain rights includes individual in competitive service with one-year continuous service), *with id.* § 7511(a)(1)(C) ("employee" entitled to those same rights includes individual in excepted service with two years continuous service).

As relevant here, certain otherwise-required procedures for taking adverse personnel actions do not apply where a position is "excepted from the competitive service because of its confidential, policy-determining, policy-making, or policy-advocating character." *Id.* § 2302(a)(2)(B). As established by Congress, a position may be "determined to be of a confidential, policy-determining, policy-making or policy-advocating character" by "the President," by "the Office of Personnel Management," or by "the head of an agency." *Id.* § 7511(b)(2).

### B. The President and OPM's Authority over the Federal Workforce

Article II of the U.S. Constitution vests the entire executive power in the President. In addition, Congress has, by statute, provided the President with substantial authority over the federal workforce. Indeed, numerous provisions provide that "[t]he President may prescribe rules

---

[1] Available at https://fas.org/sgp/crs/misc/R45635.pdf (last visited Apr. 22, 2025).

governing" a variety of Executive Branch personnel issues, including exceptions from the competitive service. *Id.* § 3302; *see, e.g.*, *id.* §§ 2301 (administering applicability of the merits systems principles), 2302 (excepting positions from prohibited personnel practice requirements), 2951 (directing reports from appointing authorities), 3132 (providing applicability of and exclusions for the Senior Executive Service), 3301 (developing rules for admission into the civil service), 3304 (creating competitive examination procedures), 3321 (designing probationary status directions), 7301 ("The President may prescribe regulations for the conduct of employees in the executive branch."), 7511(b)(2) (designating positions to be of a confidential, policy-determining, policy-making or policy-advocating character). The breadth and depth of Congressional delegation to the President in this sphere cannot be overstated. Time and again, the President is directly empowered, by statute, to make rules and develop his Executive Branch personnel policies as he sees fit.

Congress has also provided OPM with various responsibilities in this sphere. After all, the President could not manage the vast Executive Branch workforce on his own. Thus, the OPM Director is tasked with "executing, administering, and enforcing —. . . the civil service rules and regulations of the President and the Office and the laws governing the civil service." *Id.* § 1103(a)(5)(A). He is similarly tasked with "aiding the President, as the President may request, in preparing such civil service rules as the President prescribes, and otherwise advising the President on actions which may be taken to promote an efficient civil service and a systematic application of the merit system principles." *Id.* § 1103(a)(7). And for the competitive service specifically: "[t]he Office of Personnel Management shall aid the President, as he may request, in preparing the rules he prescribes under this title for the administration of the competitive service." *Id.* § 1301.

OPM need not only assist as the President personally exercises his statutory powers. Thus, "the President may delegate, in whole or in part, authority for personnel management functions, including authority for competitive examinations, to the Director of the Office of Personnel Management." *Id.* § 1104(a)(1). And in certain instances Congress provided OPM its own

authorities. *See, e.g.*, *id.* §§ 5107, 5112 (providing OPM with the authority to set standards for pay scales); *id.* § 5405 (allowing OPM to promulgate regulations governing the Human Capital Performance Fund).

When "any rule or regulation [] is proposed by [OPM]" "[t]he Director shall publish in the Federal Register general notice of [the] rule or regulation." *Id.* § 1103(b)(1). The Director is also more generally subject to certain requirements in the APA. *Id.* § 1105. However, outside the Director and rules "proposed" by OPM, the scheme excepts personnel rules and regulations from notice-and-comment requirements. *Id.* § 553(a)(1), (2).

### C. The Statutory Basis for Policy/Career Designations

As discussed, the President has been directly vested with the ability to except positions from the competitive service. Section 3302 provides that the "President may prescribe rules governing the competitive service" and that such rules "shall provide, as nearly as conditions of good administration warrant," for "necessary exceptions of positions from the competitive service." *Id.* § 3302(1). For decades, the Executive Branch has managed the federal civil service by creating such exceptions. *See, e.g.*, Excepting Administrative Law Judges from the Competitive Service, Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 10, 2018); Recruiting and Hiring Students and Recent Graduates, Exec. Order No. 13,562, 75 Fed. Reg. 82,585 (Dec. 27, 2010). Such exceptions enable a more nimble workforce and make the Executive Branch more responsive to the will of the people.

In addition, Congress specified a particular type of position—one determined to be of a confidential, policy-determining, policy-making or policy-advocating character—as qualifying for exclusion. Congress directed that a "position [that] has been determined to be of a confidential, policy-determining, policy-making or policy-advocating character by" "the President," OPM, or the head of an agency, would be exempt from various procedures governing removal, certain suspensions, reductions in pay, and other related actions. *Id.* §§ 7511–14. Positions in this category, the subject of this suit, will be referred to as "policy-influencing positions."

All told, policy-influencing positions were recognized by Congress as requiring special

5

attention and Presidential control—including exemptions from otherwise-cumbersome and time-consuming procedures where the agency wishes to remove such employees. It ensured a broad space for Presidential rulemaking to designate such positions and a high degree of accountability for these sensitive positions.

## II.    Factual and Procedural Background

### A.    The Prior Executive Orders and Regulations

On October 21, 2020, the President invoked his authority under Sections 3301, 3302, and 7511 and created a new schedule "excepted from the competitive service" for "career positions in the Federal service of a confidential, policy-determining, policy-making, or policy-advocating character." Creating Schedule F in the Excepted Service, Exec. Order No. 13,957 §§ 1, 4, 85, Fed. Reg. 67,631 (Oct. 26, 2020). Under this Executive Order, each agency was ordered that it must submit to OPM the specific positions it proposed should be added to this new schedule. *Id.* § 5(a)(i). The Director of OPM was directed to review those submissions and determine which, if any, should in fact be excepted. *Id.* § 5(d).

Upon taking office, President Biden swiftly issued Executive Order 14003 revoking the prior order and instructing agencies to "immediately suspend, revise, or rescind proposed actions, decisions, petitions, rules, regulations or other guidance pursuant to, or to effectuate, [the prior order]." Protecting the Federal Workforce, Exec. Order No. 14,003 § 2, 86 Fed. Reg. 7231 (Jan. 22, 2021). OPM then took additional action. In 2023, it issued a notice of proposed rulemaking titled "Upholding Civil Service Protections and Merit System Principles." 88 Fed. Reg. 63,862 (Sept. 18, 2023). It sought to implement, by rule: (1) retention by employees of adverse action protections when their positions are held to be policy-influencing; (2) a definition of confidential, policy-determining, policy-making, or policy-advocating" and "confidential or policy-determining" as covering only "noncareer, political appointments"; and (3) "specific additional procedures that apply when moving positions from the competitive service to the excepted service, or from one excepted service schedule to another," especially when such movements would affect adverse action coverage. *Id.* at 63862. OPM subsequently issued a final rule. Upholding Civil

Service Protections and Merit System Principles, 89 Fed. Reg. 24,982 (Apr. 9, 2024).

Several regulatory provisions brought into effect by the final rule are relevant to the present litigation. First, OPM implemented its proposed definitions for policy-influencing positions.

> *Confidential, policy-determining, policy-making, or policy-advocating* means of a character exclusively associated with a noncareer political appointment that is identified by its close working relationship with the President, head of an agency, or other key appointed officials who are responsible for furthering the goals and policies of the President and the Administration, and that carries no expectation of continued employment beyond the presidential administration during which the appointment occurred.

> *Confidential or policy determining* means of a character exclusively associated with a noncareer political appointment that is identified by its close working relationship with the President, head of an agency, or other key appointed officials who are responsible for furthering the goals and policies of the President and the Administration, and that carries no expectation of continued employment beyond the presidential administration during which the appointment occurred.

5 C.F.R. § 210.102(b)(3), (4) (citing as statutory authority 5 U.S.C. §§ 1302, 3301, and 3302).

Next, OPM added "Subpart F" titled "Moving Employees and Positions into and Within the Excepted Service," to the relevant regulatory scheme. 5 C.F.R. part 302, subpart F (citing as statutory authority 5 U.S.C. §§ 1302, 3301, 3302, 8151). The new subpart established various procedural requirements that Executive Branch officials must follow before moving positions into a new excepted service schedule, or individual employees with accrued civil service protections into a position without such protections. *Id.* §§ 302.601, 302.602. Subpart F also provided certain appeal rights to the Merit Systems Protection Board ("MSPB") for employees whose positions were involuntarily moved into an excepted service schedule. *Id.* § 302.603. Specifically, it allowed appeals challenging a failure to follow certain requirements established in Subpart F, the voluntariness of moving to a new position in the excepted service, and the "eliminat[ion of] competitive status or any procedural and appeal rights that had previously accrued." *Id.*

The regulations provided other protections to employees related to being moved to a different schedule. *See, e.g.*, *id.* § 212.401 (establishing that "[a]n employee who was in the competitive service and had competitive status" at the time of an involuntary move into the excepted service "remains in the competitive service for the purposes of status and any accrued

adverse action protections"). Plaintiff does not allege these regulations are inactive.

## B.    The 2025 Policy/Career Order and OPM Guidance

When President Trump again assumed office in January 2025, he issued a new executive order, the Policy/Career Order, revoking President Biden's order and reinstating his earlier order with some modifications. The President established a new excepted service schedule for positions of a confidential, policy-determining, policy-making, or policy-advocating character that are not normally subject to change as a result of a Presidential transition—tracking the language used by Congress. Policy/Career Order, Exec. Order No. 14,171 § 3, 90 Fed. Reg. 8625 (Jan. 20, 2025). The President directed that the Director, in consultation with the Executive Office of the President, provide additional guidance to agencies about what positions might qualify, in addition to the President's own guidance. *Id.* § 5. He established that agencies would recommend positions that may be suitable for the new schedule to OPM, and that the Director would then decide what positions OPM would recommend to the President. *Id.* §§ 3(e), 5. Recognizing that 5 C.F.R. § 210.102(b)(3), (4) and 5 C.F.R. part 302, subpart F were issued with delegated Presidential authority, he reasserted his statutory prerogative and rendered those regulations inoperative. *Id.* § 4. Lastly, the President affirmed that "[e]mployees in or applicants for Schedule Policy/Career positions are not required to personally or politically support the current President or the policies of the current administration." *Id.* § 3(f)(ii).

On January 27, OPM issued guidance pursuant to the President's directive. OPM, *Guidance on Implementing President Trump's Executive Order Titled, "Restoring Accountability To Policy-Influencing Positions Within the Federal Workforce"* ("January 27 Memorandum"), (attached as Ex. A).[2] For the most part, the January 27 Memorandum consists of guidance on positions that may qualify for Schedule Policy/Career and the procedure for future agency recommendations. *Id.* at 1–5. OPM also noted to agencies that the President, through the Policy/Career Order, had personally rendered certain regulations inoperative and without

---

[2] Located at https://www.opm.gov/media/sqfnpy4n/opm-memorandum-re-schedule-policy-career-guidance-01-27-25-final-2.pdf (last visited Apr. 22, 2025).

effect. *Id.* at 5. Lastly, OPM explained that, as the Policy/Career Order requires, "agencies will be forbidden from making Schedule Policy/Career appointments based on political affiliation." *Id.* at 5–6. The appendix of the memorandum includes a helpful consolidated version of the reinstated prior order as modified by the Policy/Career Order. *See id.* Appendix 1 ("Consolidated Order").

### C.    This Lawsuit

On January 28, 2025, Plaintiff, a nonprofit organization focused on environmental issues and related federal policy, filed this suit. Compl., ECF No. 1. On March 12, Plaintiff amended its complaint. Am. Compl., ECF No. 22. The present complaint raises six claims. The first two allege that the Policy/Career Order violates the substantive statute authorizing exceptions to the competitive service. *Id.* ¶¶ 188–96. The third claim avers that OPM unlawfully directed agencies to violate the statutes governing exceptions to the competitive service in the January 27 Memorandum. *Id.* ¶¶ 197–201. Fourth, Plaintiff alleges that the Policy/Career Order violates the Due Process Clause. *Id.* ¶¶ 202–06. The fifth claim states that the nullification of certain regulations pursuant to the Policy/Career Executive Order failed to follow purportedly required notice-and-comment procedures. *Id.* ¶¶ 207–10. And the sixth similarly states that OPM and Acting Director Ezell "failed to provide notice and an opportunity for public comment prior to taking final agency action regarding OPM's 2024 regulations inoperative and without effect." *Id.* ¶¶ 211–16. Defendants now move to dismiss the amended complaint.

### LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court considers "the complaint in its entirety, as well as . . . documents incorporated

into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Factual allegations are considered true, but "bare assertions" and "conclusory" allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation omitted).

## ARGUMENT

### I.    This Court Should Dismiss for Lack of Jurisdiction

The Court lacks jurisdiction over this matter for two reasons. First, because Plaintiff presently lacks standing to bring this suit. Second, because the claims are not ripe.

#### A.  Plaintiff Lacks Standing

Federal courts are vested "with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). A court may only "redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009)). One part of that requirement is the need for a plaintiff to demonstrate standing to sue.

To establish standing, a plaintiff must show: (i) an "injury in fact," that is, a violation of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (ii) a causal connection between the injury and the defendant's conduct such that the injury is "fairly . . . traceable to the challenged action"; and (iii) that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted). Plaintiff "bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

The alleged injury in fact cannot be "speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381

(2024). If the injury has not materialized, it must be "certainly impending," and "[a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). In addition, "standing is not dispensed in gross," and "'plaintiffs must demonstrate standing for each claim they press' against each defendant, 'and for each form of relief.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted).

Plaintiff suggests several theories of standing: (1) that it stands to lose work and revenue because some of its potential clients might be classified as Policy/Career; (2) that the Policy/Career Order will and has impaired Plaintiff's mission and caused it to divert resources; and (3) impairment of Plaintiff's ability to participate in the regulatory process. All are insufficient.

At base, Plaintiff's theories fail for a global reason. "[W]hen (as here) a plaintiff challenges the government's unlawful regulation (or lack of regulation) of someone else, standing is not precluded, but it is ordinarily substantially more difficult to establish." *All. for Hippocratic Med.*, 602 U.S. at 382 (internal quotation marks and citation omitted). Plaintiff challenges actions that may affect individual federal employees—but Plaintiff is not an employee. Necessarily, in our system of limited Article III review, that sets a high hurdle to demonstrate standing. *See id.* ("The injury in fact requirement prevents the federal courts from becoming a vehicle for the vindication of the value interests of concerned bystanders." (internal quotation marks and citation omitted)).

The first possible theory is based on a purported possible future injury stemming from the reclassification of federal employees. But a plaintiff must explain that the injury complained of is about more than "[a]llegations of possible future injury" and that a current injury is "fairly . . . traceable to the challenged action." *Id.*; *Lujan*, 504 U.S. at 560–61. That is not the case here. Plaintiff's amended complaint is riddled with references to speculation about future actions: "civil servants who are now at high risk of being reclassified," Am. Compl. ¶ 155; "fear[ of] summary termination," *id.* ¶ 161. Similarly, Plaintiff predominantly complains about the reactions of third parties as justifying standing. *See, e.g.*, *id.* ¶ 177 ("PEER has received at least 32 inquiries from clients or potential clients"); *id.* ¶ 184 ("numerous media outlets have contacted PEER); *id.* ¶ 161 ("clients and potential clients have already indicated that they are reluctant to make confidential

11

whistleblower reports or to speak to the media"). That is not sufficiently traceable to the challenged actions because "plaintiffs attempting to show causation generally cannot rely on speculation about the unfettered choices made by independent actors." *All. for Hippocratic Med.*, 602 U.S. at 383; *Clapper*, 568 U.S. at 409. Indeed, the Supreme Court suggested as much in its recent grant of a stay in a case raising similar standing issues. *Am. Fed'n of Gov't Emps., AFL-CIO v. OPM*, --- S. Ct. ---, 2025 WL 1035208, at *1 (U.S. Apr. 8, 2025) (rejecting standing for "non-profit-organization plaintiffs" and citing *Clapper*).

In sum, the claims brought here challenge speculative possibilities and third-party reactions. Moreover, the purported direct harm of lost work and revenue stems from a tenuous chain: the President will finalize a reclassification that affects some number of potential PEER clients and whistleblowers; those clients and whistleblowers will view the reclassification as denying them the ability to work with PEER; the clients and whistleblowers will act on that view and fail to work with PEER; and that PEER will therefore be harmed. Such an "attenuated link[]" is not cognizable. *All. for Hippocratic Med.*, 602 U.S. at 383.

Second, Plaintiff's diversion theory is foreclosed by the recent *Alliance for Hippocratic Medicine* case. There, the Supreme Court confronted an essentially identical theory that the government had "impaired [plaintiffs'] ability to provide services and achieve their organizational missions." *id.* at 394 (citation omitted). Indeed, those plaintiffs claimed that they "ha[d] standing not based on their mere disagreement with [the government's] policies, but based on their incurring costs to oppose [the government's] actions." *Id.* They paid for studies to "better inform their members and the public." *Id.* They "expend[ed] considerable time, energy, and resources" on the administrative process as well as public advocacy. *Id.* (citation omitted). So they spent substantial sums "to the detriment of other spending priorities." *Id.*

Those are exactly the kinds of harms cited by Plaintiff here. But the Court, after teeing up the same theory Plaintiff relies on, flatly rejected it. "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* To

succeed on a diversion of resources theory, Plaintiff must explain how "actions directly affected and interfered with [its] core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.* at 395. That is an extreme showing, and it is "an unusual case" that successfully relies on such a theory. *See id.* at 396. That Plaintiff is now fielding inquiries, planning public education, altering its planned administrative activities, and generally expending money and time is insufficient. These are exactly the kind of diversion claims rejected in that case and come nowhere close to the kind of core attack on Plaintiff required. So Plaintiff's complaint of injury is not cognizable. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell*, No. 25-cv-10276-GAO, 2025 WL 470459, at *2 (D. Mass. Feb. 12, 2025) (rejecting a similar diversionary theory for a challenge to the Deferred Resignation Program).

Last, Plaintiff complains about an inability to participate in notice and comment. But, of course, "being denied the right to comment" does not confer standing. *See Sierra Club v. EPA*, 754 F.3d 995, 1002 (D.C. Cir. 2014). "Deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). And because Plaintiff has "failed to establish that they will likely suffer a substantive injury, their claimed procedural injury . . . necessarily fails." *See Sierra Club*, 754 F.3d at 1002. Moreover, the Policy/Career Order directed that "[t]he Director of the Office of Personnel Management (Director) shall promptly amend the Civil Service Regulations" to remove the regulations that Plaintiff seeks to maintain for lack of notice and comment. Policy/Career Order § 4. All else aside, it is fatally speculative that notice and comment will not be followed there. Finally, Plaintiff points to nothing about the lack of notice and comment for the few regulations affected by the President that specifically creates an injury "fairly . . . traceable to the challenged action." *Lujan*, 504 U.S. at 560–61.

In sum, Plaintiff seeks to pursue a "generalized grievance." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). That does not present a cognizable case or controversy.

13

### B.  This Suit is Not Ripe for Adjudication

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies.'" *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). It is "drawn both from Article III . . . and from prudential reasons." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808 (citation omitted).

The test involves two parts: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties" of withholding review. *Abbott Lab'ys*, 387 U.S. at 149. An agency's mere opinion about the meaning of a law is quintessentially not fit for review. *Am. Tort Reform Ass'n v. Occupational Safety & Health. Admin.*, 738 F.3d 387 (D.C. Cir. 2013). And review is properly withheld when the administrative work "has [not yet] been formalized and its effects [not yet] felt in a concrete way by the challenging parties." *Abbott Lab'ys*, 387 U.S. at 148–49.

The paradigmatic unripe case is one that challenges a preliminary agency policy that has not been—and may never be—enforced against the plaintiff. *See AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 386 (1999). And Courts have evinced "a greater concern about ripeness" when "asked to give equitable remedies," like those sought here. Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. Rev. 530, 549 n. 85 (2016). In sum, "federal courts normally do not entertain pre-enforcement challenges to agency rules and policy statements." *AT&T Corp.*, 525 U.S. at 386. Critically, an agency action may even be final for purposes of the APA, but not ripe for review. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 810. Plaintiff's claims are unripe.

First, Plaintiff challenges a variety of actions it anticipates in the future: that the President will designate positions in violation of statute, Am. Compl. ¶¶ 188–96, and that the future rescheduling of positions will deprive employees of property interests, *id.* ¶¶ 202–06. But those are definitionally "abstract disagreements over administrative policies," and Plaintiff must instead

wait "until an administrative decision has been formalized and its effects felt in a concrete way." *See Nat'l Park Hosp. Ass'n*, 538 U.S. at 807 (citation omitted). They rely "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *See Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 295 (4th Cir. 2022) (citation omitted). It is only when the President decides whether to move positions into Schedule Policy/Career, and the concrete details emerge, that Plaintiff's claims could be ripe. But at this moment, when all that Plaintiff's may challenge is an early step in a much longer process, devoid of specifics, the claims are unripe. *See Truckers United for Safety v. Fed. Highway Admin.*, 139 F.3d 934, 938 (D.C. Cir. 1998) (rejecting statutory authority and due process claims to a guidance document as unripe and cautioning that "[t]o the extent that [plaintiff] wishes to challenge the substance of the regulatory guidance, it must wait until the Administration actually applies [the guidance] in a concrete factual situation").

Second, Plaintiff claims that OPM directed agencies to violate the statutory requirements for excepting positions. Am. Compl. ¶¶ 197–201. But Plaintiff has pointed to no such action. Presuming that Plaintiff is referring to the January 27 Memorandum, OPM has directed nothing more than reports from agencies with information to be considered by OPM before OPM makes a recommendation, who then makes the final decision. January 27 Memorandum at 3–4. "[P]laintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (citation omitted). Indeed, "[a]ll the [memorandum] does is announce the position [OPM may] take with respect to [future requests for reclassification]." *See Nat'l Park Hosp. Ass'n*, 538 U.S. at 810. That is insufficient.

Plaintiff alleges that the Policy/Career Order and OPM each eliminated certain regulations without required notice and comment. However, this challenge is ultimately unripe for two reasons. First, no position has been moved to the excepted service. It is therefore entirely unclear what, if any, effect the change in regulations would have on employees subject to the changes. Meanwhile, the Supreme Court has cautioned against "taking [a] challenge . . . [before] being presented with" an administrative action applied to an individual. *See Verizon Commc'ns, Inc. v. FCC*, 535 U.S. 467, 524 (2002). No hardship has flown to a potentially affected individual, nor

15

has a "concrete setting" been laid. *See VanderKam v. VanderKam*, 776 F.3d 883, 888 (D.C. Cir. 2015) (citation omitted). Moreover, the Policy/Career Order directed OPM to amend the relevant regulations independent of the President's own actions. Policy/Career Order § 4. This upcoming effort, combined with the lack of present effect or hardship, makes notice-and-comment claims particularly unfit for resolution.

## II.    Plaintiff's APA and Ultra Vires Claims are Barred

Plaintiff brings a combination of APA and ultra vires claims to challenge the Policy/Career Order and January 27 Memorandum. But the claims are fundamentally barred by the doctrines underlying the authorities they invoke. APA claims require a final agency action, but no such action is challenged here. And ultra vires claims are a narrow and limited doctrine of last resort and Plaintiff does not satisfy the strict test for their invocation.

### A.   APA Review is Barred Here for Lack of Final Agency Action

"[F]inal agency action" is a requirement for APA review. 5 U.S.C. § 704. Agency action requires a specific "rule, order, license, sanction, relief, or the equivalent[.]" *Id.* § 551(13). It must be a "discrete" act, and a plaintiff may not bring a "broad programmatic attack." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Meanwhile, the Supreme Court has laid out a two part test for finality, including that (1) "the action must mark the 'consummation' of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature[;]" and (2) "the action must be one by which 'rights or obligations have been determined,'" or from which "legal consequences will flow[.]" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). The APA expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704. The issue is jurisdictional. *Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024), *petition for cert. docketed,* No. 24-693 (U.S. Dec. 30, 2024).

Plaintiff brings two claims under the APA. Neither challenge final agency action. In Count III, Plaintiff claims that "Ezell and OPM took final agency action in directing agencies to act in violation of 5 U.S.C. §7511(b) and 5 U.S.C. § 2302(a)(2)(B)." Am. Compl. ¶ 199. Plaintiff

presumably is referring to OPM's January 27 Memorandum, which is discussed earlier. *Id.* ¶¶ 81–87. But that memorandum is definitionally interlocutory in nature, providing guidance to agencies in advance of a future recommendation. January 27 Memorandum at 3–4. As the memorandum explains "[a] new executive order will subsequently effectuate the transfers into Schedule Policy/Career," "OPM retains discretion to determine which categories and types of positions it will recommend," and "the President will make the final determination about which positions to transfer." *Id.* at 4. This is not the consummation of a decisionmaking process.

Indeed, the Fourth Circuit has squarely rejected the theory that "agency action producing only coercive pressures on third parties" is final agency action. *Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S. EPA*, 313 F.3d 852, 859 (4th Cir. 2002). "[T]here are no legal and direct consequences of the [memorandum]" which will instead merely help inform future agency action. *See id.* at 862; *cf. Louisiana ex rel. Landry v. Biden*, 64 F.4th 674, 684 (5th Cir. 2023) ("Plaintiffs contemplate harms that are several steps removed from—and are not guaranteed by—the challenged Executive Order or the Interim Estimates. The states cannot do away with their alleged parade of horribles in a single swipe at the duly elected executive."). Indeed, "even when agency action significantly impacts the choices available to the final decisionmaker," which this memorandum does not, it still "[would] not transform the challenged action into reviewable agency action under the APA." *Flue-Cured Tobacco Coop. Stabilization Corp.*, 313 F.3d at 860.

This case is also alike to a paradigmatic nonfinal agency action case, *Franklin v. Massachusetts*. 505 U.S. 788 (1992). There, the Secretary of Commerce was statutorily directed to provide the President a report, but the President was independently empowered to alter and amend the conclusion at his discretion. *Id.* at 798–800. Accordingly, the Court could "review the APA claims" as to the President but not the recommendation or report by the pre-Presidential agency actor. *Id.* at 800. And here, like there, the President is independently empowered to make the decision with OPM merely providing a recommendation. *See* 5 U.S.C. §§ 3301, 3302, 7511(b). OPM's action is therefore nonfinal.

Plaintiff also alleges that Director Ezell and OPM have taken final agency action by rescinding several 2024 regulations without notice and comment. But they have done no such thing. The January 27 Memorandum states that "[i]n [the Policy/Career Order], President Trump used his authority under the Constitution and 5 U.S.C. §§ 3301 and 3302 to directly nullify these regulations." January 27 Memorandum at 4. OPM does not contend that it has taken any action to rescind these regulations, but instead acknowledges the President's own actions. Consequently, Plaintiff does not challenge a "rule, order, license, sanction, relief, or the equivalent" by Director Ezell and OPM. 5 U.S.C. § 551(13). Nor do any rights or obligations flow from OPM's statement. Instead, any challenge must be against the President who took any final action. And even though final action by the President cannot be challenged under the APA, *infra* Part IV.A., the *Franklin* Court held that the APA's inapplicability to the President does not transform an agency's nonfinal action into a reviewable one. 505 U.S. at 798–801.

### B.  Ultra Vires Is Not Cognizable Here

Perhaps recognizing that there is no final agency action to challenge, Plaintiff labels several of its claims as "ultra vires." Presumably, it seeks to invoke this Court's inherent equitable powers to provide a cause of action. But that narrow form of relief is not available to Plaintiff here.

Ultra vires review is "a doctrine of last resort," *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007), and the equivalent of "a Hail Mary pass—and in court as in football, the attempt rarely succeeds," *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009). More specifically, ultra vires review of agency action is only available when an agency's error is "patently a misconstruction of [statute;]" "when the agency has disregarded a specific and unambiguous statutory directive[;]" or "when the agency has violated some specific command of a statute." *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988) (citations omitted). "Garden-variety errors of law or fact are not enough." *Id.* In other words, the ultra vires doctrine is "extremely limited" in "scope" and covers situations where the invocation of authority not granted is "so extreme that one may view it as jurisdictional or nearly so." *Id.*; *accord Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec.*, 698 F.3d 171,

18

179 (4th Cir. 2012) ("Our review under the *ultra vires* standard is necessarily narrow[, w]e may not dictate how government goes about its business.").

None of Plaintiff's claims satisfy this demanding standard. Count I alleges that the President's future designations will not be "necessary" and warranted by "conditions of good administration." *See* 5 U.S.C. § 3302. Count II alleges that "[e]ntry-level and mid-level employees will be" wrongly classified. Am. Compl. ¶ 195. Those are questions of degree and reasonableness, not invocation of an unambiguous statutory directive. Because "the agency has [not] plainly and openly crossed a congressionally drawn line in the sand" ultra vires does not apply. *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022); *cf. Dalton v. Specter*, 511 U.S. 462, 472 (1994) (explaining that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution."). And, because it is ultimately the President's future action, or the Policy/Career Order, that Plaintiff attacks, the well-trod bar on injunctive or declaratory relief against the President cannot be overcome. *Newdow v. Robert*s, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief." (internal citation omitted)); *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir. 2017) ("In light of the Supreme Court's clear warning that such relief should be ordered only in the rarest of circumstances we find that the district court erred in issuing an injunction against the President himself."), *vacated and remanded,* 583 U.S. 912 (2017). The Court should, at the very least, dismiss the President as a defendant.

Count V is a claim that Defendants have violated the APA's requirement of notice and comment. Am. Compl. ¶¶ 209–10. But that is definitionally a claim under the APA that must be subject to the APA's requirements of a final agency action. *Supra* Part IIA. Ultra vires is not simply a free workaround for the APA's threshold demands. *Fed. Express Corp.*, 39 F.4th at 764 ("FedEx's effort to dilute *ultra vires* review to the functional equivalent of the very APA action that Congress prohibited defies precedent and logic.") And, in this particular posture, it would be especially egregious. The Supreme Court has already held that the APA's restrictions do not apply

19

to actions of the President. *Franklin*, 505 U.S. at 800–01. Application of the ultra vires vehicle with the APA's substance to the President's action would overturn that clear holding.

Finally, Count IV complains of a purported future due process violation for employees in positions classified as Policy/Career. Am. Compl. ¶¶ 202–06. But that fails for several reasons. It is not a claim that Defendants lack authority to act—it is a collateral attack on the amount of process necessary to deprive someone of a hypothetical property interest. Second, the underlying question of sufficient process is not so clear and unambiguous as to support an ultra vires attack. *See infra* Part V. Third, no Due Process claim can survive here where no "person" has been deprived of any property interest, since no person has been affected.

Moreover, additional limits cabin the ultra vires doctrine. Ultra vires relief developed as an equitable remedy to prevent the government from unlawfully acting upon a person—i.e., to prevent a certain restriction or enforcement action. *See, e.g.*, *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110–11 (1902). It is not a tool for those who may be incidentally affected later, empowering them to reach upstream and proactively combat an alleged wrong to another. *See Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 902–04 (10th Cir. 2017). That is precisely what Plaintiff does here. All that Plaintiff complains about is potential future actions affecting hypothetical employees. Plaintiff may be incidentally harmed, but that is it. And this Court's inherent equitable powers do not provide a cause of action for that sort of removed harm.

Even setting all those issues aside, Plaintiff is additionally barred because an ultra vires claim is unavailable where an alternative remedial path may exist through which a plaintiff may pursue the challenge. *See Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (non-statutory review is available only when a party would be "wholly deprive[d] . . . of a meaningful and adequate means of vindicating its statutory rights"); *Lepre v. Dep't of Lab.*, 275 F.3d 59, 72 (D.C. Cir. 2001) (a "critical" requirement for ultra vires review is "the lack of any alternative means of judicial review for the plaintiffs"). If there is a final agency action, Plaintiff may seek to challenge it under the APA. Ultra vires review is not merely a convenient means to attack nonfinal action. *See Fed. Express Corp.*, 39 F.4th at 764. Nor does it matter that one of

Plaintiff's claims is a constitutional one. "The power of federal courts of equity to enjoin unlawful executive action is subject to . . . implied statutory limitations." *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–27 (2015). The existence of other pathways bars all of Plaintiff's claims, even if this plaintiff cannot bring them in exactly the manner that it wishes, or someone else must do so.

All told, Plaintiff's ultra vires claims fail thrice over and should be dismissed.

## III.    A Future Reclassification by the President is Authorized by Statute

### A.    Plaintiff Brings a Facial Challenge

As an initial matter, the Court must treat Plaintiff's complaint as raising a facial challenge to the President's exemption authority. While facial challenges are most known in the constitutional sphere, their principles also apply to statutory challenges to administrative actions. For example, a plaintiff might challenge "the facial validity of [a] rule" as not complying with the authorizing statute. *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 608–09 (1991). A court must then "decide whether the [action] *on its face* is invalid as inconsistent with the [executive official's] *statutory* authority." *See INS v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 188 (1991); *see also EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 524 (2014) ("The possibility that the rule, in uncommon particular applications, might exceed [the agency]'s statutory authority does not warrant judicial condemnation of the rule in its entirety.").

Plaintiff can point to no position yet affected. It therefore seeks a judicial declaration as to the facial invalidity of the President's authority to designate any policy-influencing positions. That "comes at a cost." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Specifically, Plaintiff "must establish that no set of circumstances exists under which the [action] would be valid." *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (discussing a constitutional facial challenge). Applied in this context: the possibility "that [the President's exemption authority] may be improperly imposed on some [positions] . . . does not mean that the [action] is facially invalid because it is without statutory authority." *See INS*, 502 U.S. at 188. And since facial attacks "'rest[]

21

on speculation' about the law's coverage and its future enforcement" they are necessarily "hard to win." *Moody*, 603 U.S. at 723 (citation omitted).

### B. Plaintiff's Facial Challenge Fails

Plaintiff asserts that the President will, in the future, reclassify positions when not "'necessary' and warranted by 'conditions of good administration,'" Am. Compl. ¶¶ 188–91 (quoting 5 U.S.C. § 3302), and will incorrectly include in policy-influencing positions individuals other than those who "do not have an expectation of continued employment as they are appointees of a particular presidential administration." *Id.* ¶¶ 192–96 (citing 5 U.S.C. §§ 2302(a)(2)(B), 7511(b)). Plaintiff also asserts a derivative claim that the January 27 Memorandum preparing for the President's action is presently violative of the statutory authorities. *Id.* ¶¶ 197–201. These claims fail on the merits of the facial challenge.

The necessary and good administration requirements are taken from Section 3302, which states "[t]he President may prescribe rules . . . as nearly as conditions of good administration warrant, for— . . . necessary exceptions of positions from the competitive service." 5 U.S.C. § 3302. That general authority has been used to create several schedules of excepted categories as determined and defined by the President. *See, e.g.*, Excepting Administrative Law Judges from the Competitive Service, Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 10, 2018); Recruiting and Hiring Students and Recent Graduates, Exec. Order No. 13,562, 75 Fed. Reg. 82,585 (Dec. 27, 2010).

For policy-influencing positions, however, the President need not simply rely on that authority standing alone. Instead, Congress has provided that the usual protections "do[] not apply to an employee— . . . whose position has been determined to be of a confidential, policy-determining, policy-making or policy-advocating character by—. . . the President for a position that the President has excepted from the competitive service." 5 U.S.C. § 7511(b)(2)(A). That is, Congress has identified a particular kind of position that, by its nature, may be regularly excepted. *See id.*

So it is not at all clear that the President need separately determine whether excepting this congressionally defined category is "necessary" and warranted by "conditions of good administration." Congress noted that the President may "except[] from the competitive service [a position] because of its confidential, policy-determining, policy-making, or policy-advocating character" and a position may *also* be "excluded from the coverage of this section [dealing with prohibited personnel practices] by the President based on a determination by the President that it is necessary and warranted by conditions of good administration." 5 U.S.C § 2302(a)(2)(B)(i), (ii). Congress thus indicated that excepting policy-influencing positions, if the President so chooses, meets these requirements. *See DHS v. MacLean*, 574 U.S. 383, 391 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."). Another way to consider Congress's use here is that policy-influencing positions are an "illustrative example[] of" what qualifies. *Yellen v. Confederated Tribes of Chehalis Rsrv.*, 594 U.S. 338, 380 (2021) (Gorsuch, J., dissenting). However considered, Congress's designation of policy-influencing positions throughout the statutory scheme strongly suggests that such positions inevitably meet the requirements.

Second, even if the terms are independently applicable, creating the Policy/Career schedule and reclassifying employees satisfies the necessary and good administration requirements for purposes of this facial challenge. As the D.C. Circuit has acknowledged, "courts are in no position to decide on their own what is necessary to the good administration" and "claim neither the right nor the expertise to administer the civil service in any small regard." *Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 495 (D.C. Cir. 1988). So courts are only "competent to determine whether an agency has exercised its discretion—broad though it be—in a manner arbitrary and capricious." *See id.* at 496. In other words, the court's only "task is to determine 'whether the [decisionmaker's] decisionmaking was reasoned.'" *See id.* at 498 (citation omitted). But the Court cannot review the President's decisionmaking under arbitrary and capricious review because he is not subject to the APA. *Franklin*, 505 U.S. at 800–01. So Plaintiff's challenge must fail.

23

Even if the Court could presently review the President's future choice, it would still survive this facial challenge. Because no position has been moved into Schedule Policy/Career, there is not yet any decisionmaking to review. So the Court must simply determine whether "no set of circumstances exists under which the [future action] would be valid." *See Salerno*, 481 U.S. at 745. But there is certainly at least some set of circumstances where the decision to move positions into Schedule Policy/Career would be lawful. *See, e.g.*, *Dean v. Dep't of Lab.*, 808 F.3d 497, 506 (Fed. Cir. 2015) ("[W]e conclude that the President acted within the authority Congress granted him in § 3302(1) to create the Recent Graduates Program and except positions from the competitive service to fulfill the goals of the program.").

At base, there are at least some set of positions that the President may reasonably determine belong in the excepted service because it is necessary and warranted by conditions of good administration. At most, this language merely requires that there be some benefit to the operation of the Executive Branch that will be realized by the placement of select positions in the excepted service. And, as the President explained, employees in policy-influencing positions "must display appropriate temperament, acumen, impartiality, and sound judgment" given the "importance of the functions they discharge." Consolidated Order § 1. The President has determined that, for these important positions, "agencies should have a greater degree of appointment flexibility with respect to these employees" and "the Government's current performance management is inadequate" *Id.* If the Court is permitted to consider the President's future choice, that is sufficient.

Finally, several courts have held that the determination of *what positions* qualify as policy-influencing positions to be unreviewable. In *Stanley v. Department of Justice*, the Federal Circuit considered the "designation of [a class of] position[s]" as being policy-influencing positions under Section 7511(b)—there the class of U.S. Trustee positions by the Attorney General. 423 F.3d 1271, 1273 (Fed. Cir. 2005). The *Stanley* Court concluded that the determination was "unreviewable by the courts because it is an 'inherently discretionary judgment call.'" *Id.* (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988)); *see Egan*, 484 U.S. at 527 (foreclosing review over "inherently discretionary judgment call[s which are] committed by law to the appropriate [decisionmaker in]

24

the Executive Branch"). The Federal Circuit accordingly dismissed the appeal. *Stanley*, 423 F.3d at 1273. The Ninth Circuit has held the same. *Stanley v. Gonzales*, 476 F.3d 653, 658 (9th Cir. 2007) ("[T]he decision to classify a given position as confidential or policy-making is not reviewable in federal court as a violation of the separation of powers doctrine."). These courts have thus held that, once the President designates policy-influencing positions, this Court's review ends.

Even if this Court believes it can review whether a position is properly a policy-influencing position, this facial challenge still fails. Plaintiff argues that the statutory language defining policy-influencing positions means only political appointees. Am. Compl. ¶¶ 192–96. That cannot be correct. Congress defined Senior Executive Service ("SES") positions, at least 90 percent of which cannot be political appointees, as positions that "otherwise exercise[] important policy-making, policy-determining, or other executive functions." 5 U.S.C. §§ 3132(a)(2)(E), 3134(b). Where, as here, Congress uses the same terms in different parts of the same scheme, "there is a presumption that a given term is used to mean the same thing." *See Brown v. Gardner*, 513 U.S. 115, 118 (1994). Congress contemplated at least some non-political-appointee positions to be "policy-making" and "policy-determining." So Plaintiff's facial challenge that no positions could qualify fails. Moreover, the word "otherwise" "look[s] for guidance from whatever examples come before it." *Fischer v. United States*, 603 U.S. 480, 487 (2024). The examples for SES employees "otherwise exercis[ing] important policy-making [or] policy-determining" functions include "direct[ing] the work of an organizational unit;" being "held accountable for the success of one or more specific programs or projects;" "monitor[ing] progress toward organizational goals and periodically evaluat[ing] and mak[ing] appropriate adjustments to such goals;" and "supervis[ing] the work of employees other than personal assistants." 5 U.S.C. § 3132(a)(2). Nothing suggests that only political appointees qualify.

Nor does such a reading make sense on its face. As a matter of ordinary meaning, there are undoubtably positions that are of a confidential character, or which are of a character that determines, makes, or advocates for policy, that are also occupied by a career official. So some

number of non-political-appointee positions may be properly understood as policy-influencing positions and placed in the appropriate schedule. Plaintiff's facial challenge cannot succeed.

### C.  Constitutional Avoidance Principles Affirm the President's Authority

Finally, even if the statutory interpretation question here were close, constitutional avoidance principles would counsel against reading the statute to limit the President's authority. "[I]t is a cardinal principle of statutory interpretation . . . that when an Act of Congress raises a serious doubt as to its constitutionality, th[e] Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (citation omitted). This applies to a variety of constitutional conflicts, including those between Article I and Article II authority. *See, e.g.*, *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 231 (D.C. Cir. 2013) ("In order to avoid substantial separation-of-powers questions, we conclude that Congress did not intend to [provide a means to obtain information directly from the President].") Approving Plaintiff's facial challenge would bring forth the precise constitutional clash forbidden by this canon.

"The executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1. He must "take Care that the Laws be faithfully executed." *Id.* art. II, § 3. "As the sole person charged by the Constitution with executing the laws of the United States, the President oversees . . . a vast array of activities that touch on nearly every aspect of American life." *Trump v. United States*, 603 U.S. 593, 629 (2024). This includes the President's critical authority to remove members of the Executive Branch. *See id.* at 621. In the exercise of that authority, the Founders expected an energetic executive able to swiftly execute on his vision.

The President's power to oversee an energetic Executive Branch often arises in the context of removal of officers. There, "the Constitution prohibits even modest restrictions on the President's power to remove the head of an agency with a single top officer." *Collins v. Yellen*, 594 U.S. 220, 256 (2021) (citation omitted). And the Court has recognized only two limited exceptions: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority."

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 218 (2020). The challenged actions here are not (on the current pre-action record) necessarily about officers of that kind. But the reasoning is readily applicable. After all, the President's unfettered removal authority over certain officers is based not just on those who directly "disobey his commands" "but also" the "negligent and inefficient" "those who exercise their discretion in a way that is not intelligent or wise," "those who have different views of policy," "and those in whom he has simply lost confidence." *Collins*, 594 U.S. at 256 (cleaned up). The reason for this vast removal discretion? "The entire 'executive Power' belongs to the President alone." *Seila Law*, 591 U.S. at 213.

The Court has not been blind to the potential conflict between the President's need to control policy-influencing employees and the general tenure protections for civil service employees. Indeed, the Court has recognized the very statutory authority invoked here as it developed its removal jurisprudence. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 506 (2010). It there explained that "[s]enior or policymaking positions in government may be excepted from the competitive service *to ensure Presidential control*," *id.* (emphasis added) and then cited the authorities that the President recognized in the Policy/Career Order, *id.* (citing 5 U.S.C. §§ 2302(a)(2)(B), 3302, 7511(b)(2)). So, as the Court recognized fifteen years ago—Congress facilitated Presidential control over Policy/Career employees to avoid encroaching on the President's authority. To narrowly construe the statute now would be to force a conflict between what power Congress has to facilitate tenure protections and the Article II authority to control critical policy-influencing positions. That is a clash Congress meticulously prevented. The Court should give full effect to Congress's carveout and reject the facial challenge.

## IV.    The President Lawfully Rendered Inoperative the Prior Regulations

The President's decision to render inoperative the prior regulations is lawful twice over. First, because the APA, by its own text, does not apply to actions taken by the President. Second, because the APA explicitly carves out personnel rules from notice and comment.

**A.  Congress Did Not Require Notice and Comment by the President**

First, the President lawfully acted on the prior regulations without notice and comment because the APA does not apply to his actions. The APA, "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). The APA's "Section 553 provides generally that an agency must publish notice of a proposed rulemaking in the Federal Register and afford 'interested persons an opportunity to participate.'" *Lincoln v. Vigil*, 508 U.S. 182, 195 (1993) (quoting 5 U.S.C. § 553(b), (c)). The notice-and-comment requirements located in that section are the default for "'legislative' or 'substantive' rules." *Id.* at 196. And the APA states "formulating, amending, or repealing a rule" are all synonymous. 5 U.S.C. § 551(5); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015). Repeals or amendments are thus subject to the same procedures as formulations.

Plaintiff's challenge flounders because the President's actions, just like his formulation of a rule, is not subject to Section 553. Indeed, the Supreme Court has consistently held that "the President is not an 'agency' under that [APA]." *Dalton*, 511 U.S. at 476. As a result, the APA, which makes "final *agency* action for which there is no other adequate remedy in a court . . . subject to judicial review," is inapplicable to the President. 5 U.S.C. § 704 (emphasis added). This conclusion flows from "respect for the separation of powers and the unique constitutional position of the President." *Franklin*, 505 U.S. at 800–01. Indeed, the Court in *Frankin* directly confronted what would happen if a statute invested the President with the authority to take an administrative action—there to make certain calculations and a final apportionment from the census. *Id.* at 800. The Court concluded that the action was simply not subject to the requirements in the APA including, for example, arbitrary and capricious requirements. *Id.* at 800–01

Plaintiff's challenge turns entirely on Section 553's requirements. But the APA cleaves the President from those strictures. And the President exercised his own statutory authority. *See* 5 U.S.C. §§ 3301(1), 3302(1), 7511(b)(2)(A). So there is no Section 553 constraint on that action.

Indeed, the Supreme Court has consistently forbidden application of Section 553 to administrative actions that the APA excepts. *See, e.g.*, *Perez*, 575 U.S. at 101.

Plaintiff's attack on the January 27 Memorandum is similarly lacking. OPM purported to exercise no authority and indeed took no action through that memorandum. It merely stated that "[i]n [the Policy/Career Order], President Trump used his authority under the Constitution and 5 U.S.C. §§ 3301 and 3302 to directly nullify these regulations." January 27 Memorandum at 4. OPM does not contend that it has taken any action to repeal these regulations, but instead acknowledges the President's own actions. Even if OPM had acted, which it affirmatively did not, it would stand in the shoes of the President who directly acted. *See Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.*, 801 F. Supp. 2d 383, 403 (D. Md. 2011) ("[T]he State Department and Assistant Secretary were acting on behalf of the President, and therefore their actions are not reviewable under the APA"), *aff'd*, 698 F.3d 171 (4th Cir. 2012); *cf. U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004) ("When an agency delegates authority to its subordinate, responsibility—and thus accountability—clearly remain with the federal agency.").

Nor does it matter that the regulations were promulgated by notice and comment. It is well established that "an agency's decision to embrace additional process" cannot bind the agency to additional process. *Sierra Club v. EPA*, 873 F.3d 946, 952 (D.C. Cir. 2017). OPM's own authority to issue these regulations derived directly from the President's authority. 5 U.S.C. § 1104(a)(1) ("[T]he President may delegate, in whole or in part, authority for personnel management functions, . . . to the Director of [OPM]."). Specifically, OPM cited as statutory authority 5 U.S.C. §§ 1302, 3301, 3302, and 8151. 5 C.F.R. § 210.102(b)(3), (4); 5 C.F.R. part 302, subpart F. But only Sections 3301 and 3302 cover the subject-matter of the regulations, and both invest power in the President, who may then delegate the power to OPM. Here, the President reasserted the authority he previously delegated. At that time, Section 553 did not apply because it would not apply to the President's formulation of a rule. *Franklin*, 505 U.S. at 800–01; *see* 5 U.S.C. § 551(5). Plaintiff's attempt to subject him to Section 553 of the APA accordingly fails. "[I]mposing such an obligation is the responsibility of Congress or the administrative agencies, not . . . courts." *See Perez*, 575

U.S. at 102.

**B.  The APA Exempts Personnel Rules from Notice and Comment**

Even setting aside the overall inapplicability of APA procedure to the President, there is another bar here. Certain critical executive domains like "a military or foreign affairs function of the United States" and, as here, "a matter relating to agency management or personnel," are excepted from notice and comment. 5 U.S.C. § 553(a)(1), (2). Congress thus "cut[] a wide swath through the safeguards generally imposed on agency action." *Humana of S.C., Inc. v. Califano*, 590 F.2d 1070, 1082 (D.C. Cir. 1978). The actions challenged here are all at the core of management and personnel—they deal with the regulations governing civil service employment— and therefore the exception applies. *See Stewart v. Smith*, 673 F.2d 485, 498–99 (D.C. Cir. 1982).

Plaintiff will likely respond that an exception to the exception applies. Ultimately, Congress brought some personnel rules within the scope of notice and comment. Congress directs that "[t]he *Director* [*of OPM*] shall publish in the Federal Register general notice of any rule or regulation which is proposed by the Office," 5 U.S.C. § 1103(b)(1) (emphasis added), and "in the exercise of the functions assigned under this chapter, *the Director* shall be subject to subsections (b), (c), and (d) of section 553 of this title, notwithstanding subsection (a)." *Id.* § 1105 (emphasis added). Thus, in certain circumstances, the Director's actions are subject to the section 553 requirements in whole or part.

Plaintiff, however, does not challenge a "rule or regulation which is *proposed by* [OPM]," *id.* § 1103(b)(1) (emphasis added), nor an action by the Director "in the exercise of the functions assigned under th[e] chapter." *See id.* § 1105. Instead, the President acted directly and without relying on the Director. The President, not the Director of OPM, acted and the exception to the exception is inapplicable. Notice and comment was accordingly not required.

**V.    Plaintiff Does Not Plausibly Allege a Due Process Claim.**

In Count IV, Plaintiff alleges that the President and OPM have stripped certain federal civil servants of their property interests in continued employment in violation of due process. But Plaintiff alleges no harm to a protected property interest, nor does it plausibly allege that due

process violations occurred in this preliminary and exploratory exercise of the President's exemption authority. *See* Am. Compl. ¶¶ 121–25, 202–06. This claim should be dismissed.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A government benefit may sometimes constitute an interest, but not all government benefits enjoy such constitutional protections. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citation omitted).

Plaintiff fails to identify harm to a constitutionally protected interest that could give rise to a due process claim. Under certain circumstances, the actual firing of an individual civil servant may implicate a constitutionally protected property interest in continued employment. *See, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (requiring pretermination opportunity to respond to dismissal, and post-termination administrative proceedings for State employees with expectation of continued employment). But Plaintiff does not plausibly allege that any federal civil servants have been terminated because of the President's preliminary efforts to implement a future Schedule Policy/Career. Nor does Plaintiff allege that any employees have been fired connected with Schedule Policy/Career. That alone defeats the claim.

Turning to the relevant law—including cases that Plaintiff erroneously cites in support of its allegations—underscores that Plaintiff states no claim for a due process violation. First, Plaintiff appeals to the history of civil service protections in the United States, arguing that civil servants have had a property interest in continued employment since "at least 1912, when the Lloyd-La Follette Act required just cause to remove a federal employee. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–77 (1972)." Am. Compl. ¶ 124. Plaintiff's citation to *Board of Regents* is misplaced. There, a State university informed a professor hired to teach for one year that it would

31

not rehire him. *Bd. of Regents*, 408 U.S. at 566–68. He sued, claiming that the State failed to give him notice and an opportunity for a hearing in violation of his procedural due process rights. *Id.* at 569. The Supreme Court firmly rejected the claim. A government employee's "'property' interest in employment" is "created and defined by the terms of his appointment." *Id.* at 578. Since "the terms of the [professor's] appointment secured absolutely no interest in re-employment for the next year" he had no due process entitlement to challenge the decision. *Id.* This reasoning ultimately supports Defendants position. First, Plaintiff does not allege that any employee has lost a property-interest-protected role due to Schedule Policy/Career. Second, the Court emphasized that an employee's entitlement is ultimately defined by the positive law governing one's terms of employment.

Next, Plaintiff alleges that the President cannot eliminate a civil servant's purported property interest in continued employment by moving the employee to Schedule Policy/Career, citing *Roth v. Brownell*, 215 F.2d 500, 502 (D.C. Cir. 1954). *See* Am. Compl. ¶ 125. In *Roth* the D.C. Circuit determined that the Lloyd-La Follette Act, as a matter of statutory interpretation, protected removal from the competitive service, whether that removal occurred by dismissal or by moving the position into the excepted service. *See Roth*, 215 F.2d at 502.

Even setting that aside that no employee has been moved to Schedule Policy/Career, *Roth* does not support Plaintiff. First, the D.C. Circuit later clarified that agencies could dismiss an employee from a policy-making or confidential position purely based on a loss of confidence. *See Leonard v. Douglas*, 321 F.2d 749, 752 (D.C. Cir. 1963) (upholding dismissal of veteran from "confidential and policy-making" position due to loss of confidence). Second, a statutory interpretation opinion says little about Due Process. Finally, the Civil Service Reform Act repealed the provisions of the Lloyd-La Follette Act at issue, *United States v. Fausto*, 484 U.S. 439, 455 (1988)—with a framework that provides the President the positive authority to create Schedule Policy/Career. *See* 5 U.S.C. §§ 3301, 3302, 7511.

Plaintiff also cites *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985) to support the conclusory allegation that "once federal employees obtain tenure protections, they

retain them—even if their positions are reclassified into positions no longer eligible for those protections." Am. Compl. ¶ 122. But *Loudermill* addressed the need for a pretermination hearing for certain State employees who were dismissed from their posts, not reclassification into a position with different protections. *See Loudermill*, 470 U.S. at 535–37. And Plaintiff does not allege any employee has been moved into Schedule Policy/Career.

In any event, as *Board of Regents* recognized, it is well established that interests created by positive law may be cabined by positive law. So property interests created by a legislature may be cabined by that legislature. *See, e.g.*, *Gattis v. Gravett*, 806 F.2d 778 (8th Cir. 1986); *Rea v. Matteucci*, 121 F.3d 483 (9th Cir. 1997); *McMurtray v. Holladay*, 11 F.3d 499 (5th Cir. 1993). Here, Congress cabined any purported property interest in competitive service protections with the unambiguous carveout for policy-influencing positions. *See* 5 U.S.C. §§ 2302(a)(2)(B), 7511(b)(2)(A). So even if a position is moved into Schedule Policy/Career through the legislatively designated process, no property interest is deprived without due process of law. Moreover, the act of creating Schedule Policy/Career is itself legislative because it is of general applicability and therefore does not implicate due process. *See Gattis*, 806 F.2d at 781 (holding that employee fired because his civil service protections were extinguished by a legislative act "affords all the procedural due process required by the Constitution"); *McMurtray*, 11 F.3d at 504 (same); *see also Correa-Ruiz v. Fortuno*, 573 F.3d 1, 15 (1st Cir. 2009) ("[W]hen statutory benefits are denied or terminated pursuant to a class-wide policy determination, as opposed to an individual determination of eligibility, the Due Process Clause does not require the state to afford a hearing." (citation omitted)).

Lastly, even if the Court were to conclude that hypothetical employees whose positions are eventually moved into Schedule Policy/Career are thereby deprived of a property interest and thus have suffered a due process violation now, "the question remains what process is due." *Loudermill*, 470 U.S. at 541 (citation omitted); *see also Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996). Plaintiff does not explain what process is due and

33

therefore Plaintiff's claim—that the purported present violation means the Policy/Career Order was "issued without legal authority and is ultra vires," Am. Compl. ¶ 206—cannot succeed.

Ultimately, Plaintiff is contending that the Government may not even consider using its authority to effectuate the Congressionally designed policy-influencing positions. But precedent does not support such an expansive reading of due process.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.


Dated: April 22, 2025                    Respectfully submitted,

                                        ERIC J. HAMILTON
                                        Deputy Assistant Attorney General

                                        CHRISTOPHER R. HALL
                                        Assistant Branch Director

                                        */s/ Jason Altabet*
                                             Jason Altabet
                                             (MD Bar No. 2211280012)
                                             Kevin K. Bell
                                             (GA Bar No. 967210)
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L St. NW
                                             Washington, DC 20005
                                             Phone: (202) 305-0727
                                             E-mail: Jason.K.Altabet2@usdoj.gov

                                             *Counsel for the United States*